Good afternoon. Illinois Appellate Court, 1st District Court is now in session. The 6th Division, the Honorable Justice Sharon Oden Johnson presiding, case number 22-0804, consolidated with 22-0877, Trucking Insurance Exchange v. Miriam Ulman. Good afternoon, everyone. I'm Justice Sharon O. Johnson. I am joined by my colleagues, Justice Michael B. Hyman and Justice Sanjay T. Taylor. You will each be given 20 minutes in order to make your argument. I'd like to first begin with the appellant. Please state your name and how much time you'd like to utilize on your argument as well as for your rebuttal. Good afternoon. This is Emily Garrison. I'm here on behalf of three of the appellants, Realty Advisors Limited, Howard Silver, and Chandrika Thomas. We would like to use 15 minutes and reserve five minutes for rebuttal. Okay. Thank you. May I have the appearance of the appellee? I'm sorry, Your Honor. I'm Justice Johnson. I am Julie Lerman. I represent the other appellants in this matter. There are 12 individuals, and we would also like to have 15 minutes for argument and reserve five minutes for rebuttal. Okay. Well, you have a total of 20 minutes, so you have to determine how you're going to split the 20 minutes. So did I miss say five minutes for rebuttal? 15 minutes for argument and five minutes for rebuttal. Okay. Well, Attorney Garrison. Oh, I'm sorry. We have combined 20 minutes. Yes, we have combined 20 minutes. Okay. Oh. That's no problem here. We're pretty liberal with our time, so we're not going to completely, you know, particularly if there are questions, I won't, you know, cut you off right at the 20, but I want you to work within that time frame as a starter. And I'm happy to work with counsel or do whatever Your Honor's would please suggest that we do, you know, about seven minutes and seven to eight minutes and reserve two for rebuttal. Also, again, happy to do what counsel wants whoever wants to go first. I agree. I'll probably take eight. Okay. Reserve two. I'm sorry. Shall I argue first? I'd be happy to begin Your Honor. Very good. So let me hear from the appellee at this point. Good afternoon. Didn't work out being a truck insurance exchange. Okay, very good. Attorney Lerman, you may begin. Okay. My name is Julie Lerman I represent the unit owner appellants were a group of 12 individuals who resided in eight of the condominium units in the 35 unit building. The unit owners filed the lawsuit as you know, again seven defendants in truck insured all of the defendants and denied. We're well aware of the facts. We've read, we've read all the briefs which all the attachments and over the record. So my question to you is, of all the arguments you make, which one. And maybe there's two but I want to know your best arguments why we should reverse this case, give us the absolute best that you think is a sure, sure winner. Yes. In our opinion, the crux of this case is very simple. It is whether truck has fulfilled its burden to prove without a doubt, based on the allegations in the underlying complaint and comparing those to the provisions of the policy, whether there is any possibility of coverage for any of the allegations in the underlying complaint. If there is any possibility of coverage. The then truck is duty bound to defend the only way that truck can deny its duty to defend. If, based on those same allegations and comparing them to the provisions of the policy, there is no possibility excluding all possibility for all claims under all coverages. In our opinion, truck has failed to do so. Have I answered your question, Justice Simon. Well, you, that's the major, but going deeper into that argument. Why should we rule in your favor. Okay, well, I, if I can address the two main exclusions that have been argued in the underlying briefs. Exclusion 8C, which is regarding reserves and exclusion 12, which is regarding the insured versus insured exclusion. Exclusion 8C states that any claim that arises from the failure to maintain or establish adequate reserves is not covered. There is no allegations in the underlying complaint regarding the failure to establish or maintain adequate reserves. In our opinion, there has been a misunderstanding by the circuit court, you know, and as argued by truck that reserves are the same thing as insurance reserves and insurance are not the same. Reserves are covered under section 9C2 of the Illinois Condominium Property Act, which states that the board at the time of making a budget should establish a reasonable amount of reserves for capital improvements and deferred maintenance regarding the repair and replacement of the common elements. In other words, if your roof is going to be, you know, obsolete by wear and tear in 10 years, in 10 years they should have reserves to do the roof. In contrast, section 12A1 of the Condominium Property Act requires the association to carry building coverage at full replacement cost, which covers the risk of casualty. Casualty and ordinary maintenance or deferred maintenance and capital improvements are not the same thing. Reserves do not cover the same thing as property insurance. We never allege nor is there any allegation even what the reserves were at the time of the fire. There's nothing in any of the briefing that says what the reserves were. Yet, Truck argues the mere fact that there's not an extra $2.6 million sitting in the association reserve account to cover this insufficient, this deficit in insurance proceeds in and of itself means there was not enough reserves. Well, where did the judge, I mean, how did the judge come up with this functionally equivalent theory? That's a conundrum. I believe that they are misguided and have a misunderstanding what reserves are for. Moreover, section 14 of the Illinois Condominium Property Act states what the association should be doing in the case of insufficient proceeds, which presupposes that the unit owners actually know of the insufficient proceeds, which in this case they did not. And the unit owner should be deciding for themselves whether or not they want to cover those insufficient proceeds or else there's a procedure for partition. So that was not followed. But in no event is there any allegation in the underlying complaint pertaining to reserves. Nor can all the other argument that I wanted to assert is that, according to Truck, actually every single one of the allegations in the underlying complaint really is just a failure of reserves. That I think is also a very flawed argument. We have numerous allegations in the underlying complaint that have nothing even to do with reserves or insufficient insurance. So, in order for that exclusion 8C to even apply, even if you were saying everything does arise from insurance, you would have to address that to every allegation in our complaint and say there's no possibility of coverage for any allegation in any coverage. And that is just incorrect based on the legal principles that govern the duty to defend. Council, I'm going to ask you to conclude at this point. Similarly, I would just want to say in exclusion 12, which is the insured versus insured exclusion. There is no allegations in the underlying complaint that the underlying lawsuit was brought on behalf of the association or any other insured party, nor is there any allegation in the underlying complaint that the unit owners group was in collusion with anyone to bring this case. And in fact, if the court looks at its own decision in Illinois Tool Works, in that decision, even if both parties agree there was a matter that would preclude coverage down the road, if there was no allegation in the underlying complaint, the duty to defend still survived. Thank you. Attorney Garrison. Yes, good afternoon. May it please the court. Again, my name is Emily Garrison, I represent three of the appellants here as Realty Advisors, Chandrika Thomas, and Howard Silver, I'll refer to them as the Realty Insureds as shorthand. To briefly start or, you know, take off from where counsel ended on exclusion 8C. We are in complete agreement that the trial court misinterpreted exclusion 8C and created what we've explained is a false equivalence between reserves and insurance. Do you have any idea how this functionally equivalent arose? That is a conundrum for me as well. I'm not aware of any case law that would suggest that you could, you know, look at a term and insurance policy and decide that it's functionally equivalent to something else. Instead, under the Illinois case law, you look at the plain ordinary meaning. And as we've explained in our briefs and as counsel suggested, in our view the plain and ordinary meaning of reserves is defined in the Condominium Act, and also in the declarations. And again, that definition makes clear that reserves are paid by the unit owners for maintenance or repair and capital expenditures associated with a common element. So, you know, things like wear and tear, upkeep or improvements. That's consistent with the Condominium Act and the declarations. Insurance, on the other hand, is what you have in place for catastrophic events, things like a fire. S is what happened here. So, again, it's a conundrum for us as to where the equivalence came from, but when you look at the law that requires you to look at the plain ordinary meaning and the actual plain ordinary meaning of those two terms, they are completely different. And I just, again, use the opportunity to point out, again, that Truck wrote a policy that excludes failure to maintain adequate reserves, but does not exclude failure to maintain adequate insurance. The words of the policy matter and have to be taken into account. The application of the exclusion to these facts is just not free and clear from doubt, which as counsel suggested is the standard that we're looking at in this case. Another, you know, another point I wanted to briefly make on Exclusion 8C was Truck's, was to address Truck's suggestion that an allegation that the defendants failed to maintain a sufficient reserve to rebuild the property can be inferred into the complaint. Truck conceives this is not an allegation that's actually made. They argue that it can be inferred. We don't think the duty to defend is based on inferences. But also, even if the court could infer allegations into the complaint, Truck is wrong that this complaint involves sufficiency of reserves. As counsel mentioned, there's no allegation that the reserves were insufficient. The Prisja complaint does not say anything about reserves to rebuild the property. Instead, the Prisja complaint makes an allegation under Section 14 of the Condominium Act, which is the section that addresses what happens when a building needs to be reconstructed after a fire, like what happened here. It's not reserves or assessments that make up for any insurance shortfall. Instead, there's an implicit recognition in Section 14 that reserves are not what's going to pay when your entire building is destroyed, unfortunately. If a property is destroyed and insurance is insufficient, Section 14 calls for either all of the unit owners and parties of interest to agree to reconstruction or deem the property owned by the unit owners and subject to partition. And finally, on Exclusion 8c, and this was counsel's point as well, but I just wanted to reiterate, Truck's suggestion that the allegations against the realty insureds of the failure to manage the reconstruction process somehow do not independently trigger coverage. Truck does not dispute that the Prisja lawsuit alleges reconstruction mismanagement, so things like failure to properly control disbursements of insurance proceeds, the proceeds that were there, or failure to exercise due care to be informed of the status of the work performed and whether the work was performed in a good and workmanlike manner. So, contrary to what Truck has argued, these are allegations that the construction process itself was mismanaged within the approximately $6 million of insurance coverage that was available. Again, the underlying lawsuit is ongoing. The realty insureds, of course, deny all the allegations against them in the lawsuit, but it's possible that they could be held liable on grounds that are completely divorced from the issue of whether or not there's sufficient insurance coverage for the property. And finally, I just wanted to very briefly address Exclusion 12, which is the insured organization versus insured exclusion. Our view, of course, is that the court can decide as a matter of law that it does not apply on its face. That exclusion only precludes claims brought or maintained by or on behalf of an insured organization. Here, the plaintiffs are individual unit owners and occupants that bring individual claims on behalf of themselves only, not on behalf of an organization. Trial court concluded that the claim is potentially within Exclusion 12, and it could not decide its application as a matter of law. We would assert that the trial court could have taken this one step further by recognizing that the lawsuit potentially falls within Exclusion 12. The trial court also necessarily concluded the reverse, that the PRISA lawsuit potentially falls outside Exclusion 12, and under established principles of construction, the potential for coverage is enough to trigger the duty. Are there questions of fact on that? Are there questions of fact that need to be decided by the trial court, and that's why the judge ruled as he did? I understand that's what the judge ruled. In our view, there are no questions of fact on the duty to defend as respects our clients, the realty insureds, and that is because the exclusion on its face applies only to claims brought by the insured organization, and there's no question of fact in our view. But again, we think that the trial court could have taken this one step further. So, Ms. Garrison, your view is that there's no set of facts under which this exclusion would apply? That's correct, yes. Even if the board members had authorized this individual to bring the suit on their behalf? Our view is that as to the way that the exclusion is written, it only applies if the claim is brought by or on behalf of the insured organization. While the insured organization may have some claims, these individuals have their own specific individual claims, which they've brought, and you can't use the fact that the insured organization's claims may be excluded to swallow the individual claims that are not excluded. And again, that's, you know. I mean, the problem is, one of the problems, we're at a pleading stage, and this is judgment on the pleadings, which means just look at the pleadings, and you're saying that that alone was enough. That's correct, yes, that alone was enough. And the reason for that is strictly because what in the pleadings would just knock that out of the park? It would be looking at the, you know, the policy compared to the underlying complaint, and the underlying complaint, which is the only plaintiffs in the underlying complaint are individuals, not the organization, and they're bringing claims on behalf of themselves. Okay, I'm going to ask you to conclude with this. Sure, if there's nothing further, I'll just reserve any additional time. Thank you very much. Very well, thank you very much. Attorney Korger. May it please the court, counsel. Again, Dan Worker on behalf of Truck Insurance Exchange. I guess I'd like to start right from the exclusion 8C conundrum that we've been talking about. Judge Adkins did get it right when he decided that 8C applied to this case. As the court is aware, the unit owners HOA and defendants in this case purchased a policy insurance from Truck Insurance for the first party property loss that they made a claim on. Truck paid that claim in full, roughly $6.5 million to cover the building for the insurance that was purchased. What the unit owners are trying to do with the HOA and realty management company is to try to fill that gap in coverage, that shortfall, the $2.5 million, by making a claim against the directors and officers for this failure to procure insurance. And that's exactly what 8C is intended to prevent. It prevents HOAs from… How is this exactly? I don't understand that. Because looking at the complaint, I don't see that at all being exactly. Here's how it works, Your Honor, in our view, and I believe in Judge Adkins' view. Under Article 7 of the Declarations of Condominium, the association operates through assessments, which are cash that go into the coffers of the HOA to pay their expenses. If you look at Article 7, which we said in our brief, it covers insurance. I mean, at the beginning of the year, the board sets forth those expenditures that they need reserves, cash. Are you saying that insurance is, by definition, is part of a reserve? It is, Your Honor. Well, that's not in the definition under the Condominium Act. What precedent do you have? I mean, even the judge didn't believe that because he called it functionally equivalent, which means it's not equivalent. And there is no case. Can you cite one case that called insurance functionally equivalent to reserves? Is there any case in the country? Not that I'm aware of, Your Honor. Okay, so you're asking us to make new law because no court in the country has ever reached that functionally equivalent standard that the judge set here. And the problem, you know, is trying to convince us why that is appropriate when the Condominium Act and the policy itself doesn't say at all. You could have written it that way, but you didn't with regard to insurance being involved in reserves. I'm not an accountant. I did take accounting in law school, and it was an important course, but I don't see how that's related. It's the equivalent. I agree with you. There is no case interpreting this exact issue before the court. We believe there's no case interpreting it because every expense that's incurred by the association, you know, there's no provision in here for using reserves for maintenance of the building, for cutting the lawn, for putting in a sprinkler system. Those are all expenses that are encompassed in the assessment Article 7, which includes the purchasing of insurance. So I think the court is correct. Assessments are different than reserves. Well, it speaks for, in that provision, what the reserves are used for. The assessments are the cash that create the reserves for the purpose of those expenditures during the course of the year. Mr. Worker, your argument seems to be that because insurance, like any other expense, is paid from the association's reserves, therefore, by definition, it is part and parcel, insurance is part and parcel of a reserve. Am I fairly characterizing your argument? That is correct, and I believe that's where Judge Adkins came out on Exclusion 8C. Exclusion 8C relates to or arises from the mismanagement of those funds, those reserve funds. So let me push you on that then. Sure. You know, it seems like you're asking for such a broad definition of reserves that it could basically exclude any wrongdoing of a condominium board, because, you know, condominium boards, by and large, deal with expenditures, right? Correct. If something is an expenditure, then, therefore, it's a reserve, and, therefore, there's no liability. No, that's not true. Because Exclusion 8 only applies to those reserves to establish, maintain after reserves or levy special assessments for repair, replacement, improvement, or maintenance of the common areas or property owned by the named insurer. It doesn't encompass as broad of a definition as the court is suggesting, in my view. So it's limited to this circumstance. It's limited to where there's a shortfall of a maintenance of the property issue that should be dealt with by the reserves that are on hand, a special assessment, or some other action that the board takes with regard to unit owners. When I think about reserves, Mr. Worker, I think about, you know, what I'm required to pay in assessments every month. And I think your average person would think about, you know, assessments going into the association's reserve. They don't think about, you know, the insurance policy being considered a reserve. They think about that as a backstop in the event of catastrophic liability. I'm not aware of any association that has such large reserves that they can pay for the cost of rebuilding a big condominium building. I mean, I think most people would be surprised if that was the case. Right. I mean, that's why, you know, Article 6 of the Declaration of the Condominium that we cite to also require the board to purchase adequate insurance for that purpose. But there's unforeseen contingencies that are also included in those reserves. So, if there's a shortfall, which there is here, it needs to be done with the reserves that are in hand, special assessment, or some other action as council suggested under Article 14, you know, in a partition action. If your argument is correct, okay, let's assume that. Then why would the judge call it functionally equivalent? The judge would have just said it is reserves. It's the same as reserves. It's functionally equivalent. I'm sorry, go ahead. No, no, go ahead. It's functionally equivalent because they use the cash reserves to pay for that policy. So, it's not actually a reserve. It's already a purchased asset of the Condominium Association. When farmers paid out those funds. Go ahead. When farmers paid out those funds at $6.5 million, that became a cash reserve that the board used for the restoration of that building. I mean, the board operates in cash reserves. I mean, that's what it does. I mean, that's how they pay their expenses. That's how they purchase services for the condominium. But that's how you're getting into it, just as Taylor was saying. And you're wrapping every single bill into reserves. And that's not what the policy says. And that's not how the condominium act reads. That's not how the policy reads. And you could have written it like that, but it isn't. The law says we have to look at it from the insurance point of view, right? Right. So, you would be condoning the activity of a board intentionally underinsuring itself so that they could turn around and if they had a catastrophic loss, sue themselves to fill that gap. It would be condoning that practice. That's the way you were characterizing it, but that's not necessarily true, which gets me back to one of the. And I wanted to give you an opportunity to respond to some of the assertions made in the reply briefs, since you haven't been able to do that. But that goes really like the 1st assertion in. Individuals group, individual owners. Reply was that. You describe and page 1 of your brief. The unit owners group is a group of unit owners who collaborated with the board of directors. That's a conclusion. And for that allegation, you say the entire underlying complaint. So, where in the complaint is that allegation? Where do you come up with that? Other than that's a conclusion that you reached. But we're looking at 2 complaints are the declaratory judgment action, which has our allegations and includes the crime complaint and it includes. Exhibits with regard to emails and other meetings that were that were held to establish. You know, what the purpose of that meeting was where they got the approval for the again. You cite the entire complaint. That doesn't tell me anything where specifically in there. If you say the unit. Owners group are the owners who collaborated with the board. Where is that in the complaint? You said the whole complaint, it's in our complaint. Your honor. Well, that doesn't matter. Right? No, it does matter under environment. And if you look at. The footnote for in the written opinion from judge Atkins, he looked at those inferences and the allegations that we have in our complaint. Well, you can wait a minute on page 1, you don't cite your complaint for that assertion. As I understand it, you only cited. The underlying complaint. So, now you're telling me you're actually setting your own complaint. And we should take your complaint. Is true. It's a motion for judgment on the pleading. So facts that are applied in our declared action. Yes, with the exhibits, which include the underlying complaints in the case. To support our argument, not only on an 8C, but also on exclusion 12. Well, how about we go on to another. Allegation regarding the reserves. Defendants breach, you say that the underlying complaint alleges that. Underlying defendants breach contractual and fiduciary duties. By failing to properly estimate reserves required for insurance. On the other hand, and then again, you. You would say the entire underlying complaint without exhibits. Again, there is that they say there's not 1 allegation underlying complaint. That any of the insured defendants fail to properly estimate reserves. Or fail to maintain it, or in repair the common elements. If it only relates to the underlying complaint, your honor, that was an error. I was referring to our complaint, which included the underlying complaint. Paragraphs 25 and paragraph 86 of the product complaint. You know, address those issues as well. I mean, we can go through. You know, if the court like specific allegations in the underlying complaint, where those inferences that the court drew can be drawn. And I think the inferences from the underlying complaint. From our declaratory judgment action with its exhibits under environment. The court can consider that evidence in determining this coverage issue. And, you know, the coverage issue in our view is very simple. It's whether or not. Directors and officers coverage applies to the failure to maintain reserves or assessments. For the repair or maintenance of property, which we don't think it does. We think this is a situation where a fire loss had a shortfall. And there was a failure of reserves or assessments to make that property whole. And that would fall within exclusion agency. What about the, they say that you inaccurately state the association purchased the policy knowing the limits to be insufficient to save. Reserves that those allegations are from the exhibits that we attach to your citation is to the underlying complaint. Paragraph 86 into the chrome complaint. Yeah, paragraph 20. So, now the chrome complaint is not part of this. At all, so the judge has to go to another complaint and another lawsuit. And that's appropriate under a judgment on the pleadings. It is under environment. It's my pleading that we filed a motion for judgment. That doesn't mean everything in your pleading is true. I mean. That's the question that the judge ruled that there's a question of effect here with regard to those types of issues. So, you seem to think that we should just follow your complaint and really ignore the underlying complaint that was filed by the police. Right. Well, to 2 points runner when you're considering that there was an argument made that they're not ensures that it's a different complaint than the crown complaint, because they have their own individual claims. The claim here for our insurance only applies to the condominium common elements. There is no individual coverage under our policy for any unit or they have their own coverage for that for those losses to their own individual personal property. Their crime complaint was on behalf of all unit owners. It was authorized by the to sue the directors in that case, which is exactly the point of exclusion 12. The judge said that's a question of fact that can't be determined on judgment on the pleading. Right? I mean, that's what the judge said. That's what the judge said. He felt that he didn't have enough information at the point of a judgment on pleading stage to apply exclusion 12. And your opponent that actually, there's enough information there to the judge and even know that need to go there, but just say, it's different. Yeah, as a matter of judgment on the pleadings that you would write and I agree with counsel that there's enough information in there to apply the exclusion, based on the allegations and the approval that the unit owners got from the HOA to sue the directors. And that's specifically what is prohibited by the policy for these types of suits. Mr. Walker did and I just don't recall, but was, was there an answer file to the declaratory judgment complaint? Yes. And did the defendants deny the allegation that they brought the suit after they were authorized to buy the association. Specifically for that allegation in the complaint. I don't have a recollection of that. Your honor. I mean, it wasn't raised. Well, if they did. They wouldn't there be an issue with that. No, because I think the court can take a look at the history and the exhibits that we have that showed that the board authorized suit against directors and officers on behalf of all unit owners. And let's keep in mind, again, the coverage that they're seeking under the truck policy against the directors and officers for wrongful conduct directly stem from that grand lawsuit. I mean, they were all unit owners that were suing on behalf of the commonality for that coverage, not for their own individual claims for the damage to their individual units. And that's what tainted the entire litigation. And why was the only plaintiff. Right. Crone filed it on behalf of the association. It's a putative class. It wasn't certified. Was it. Correct. It wasn't. You're assuming there was a class. There is no class. No, your honor. I'm not. I mean, they brought the action on behalf of all unit owners that they were authorized to do by the board. And after truck denied the claim based on exclusion 12. They dismiss that action, and that's when we got this new lawsuit. You can conclude at this time, please. Your honors, I believe if the court looks at how. They operate by taking in cash assessments that go into a reserve fund. And under the declarations of condominium, those funds go into a reserve fund to pay their expenses. Part of those expenses include insurance. There was a shortfall in this case in insurance. And this shortfall clearly relates to the failure to maintain those reserves adequately enough to meet those expenses that fall squarely within exclusion. I don't think the court needs to do any further inquiry. I think Judge Atkins got it right on the applicability of exclusion HC in this case. And I think the court needs to affirm that judgment. And I appreciate your time. Thank you very much. Rebuttal. Attorney Lerman. Two and a half minutes. Yes. Thank you, your honor. I have to disagree with several of the points raised by counsel first, just even to his last point. I think there is a misunderstanding. And again, it can a fusion of separate. This is with respect to HC of separate ways in which associations handle their funds. They have a budget, and there's ordinary expenses, which annual insurance premium will be part of that. They have an operating budget. They pay their landscape, or they pay their management association fees. They pay their electric bill. They pay their ordinary expenses out of their budget. Then they also, as part of that budget, have a line item. It's called reserves. That reserve line item is for anticipated capital expenditures to replace obsolete things. Do you need tuck pointing in five years? Do you need a new hot water heater in 10 years? That's not part of the operating budget. Your insurance premiums are your regular annual payment. Maybe you have a lot of different regular payments. That's in your operating budget. Reserves is not your operating budget. Reserves is something very specific for a specific purpose. The association paid their premium to truck. In exchange for that premium, they got insurance covered for casualty. The premium was about $10,000. They got $5.8 million in coverage. Actually, 6.4 was paid out. They're not going to have reserves for $5.8 million to cover a potential casualty loss. That's not even appropriate in 9C. That's covered in 12A1. I think there's just a total confusion about how associations manage their money. I would contend that all the money, based on the allegations of the complaint, was signed over by check and paid to Lawrence and never went into any account because all of the checks had the endorsement of Howard Silver on it and allowing Lawrence to go and cash it. I disagree with all of the characterization of counsel regarding reserves. I think that whole misunderstanding is shared in part by the circuit court and gave rise to the determination that 8C applied to exclude all allegations in the complaint. I also want to reiterate, as counsel for the Realty Panelists did, that there are numerous allegations in the complaint that have nothing to do with whether or not there were failure of reserves. Also, and I would say reserves are not used to purchase insurance. I also wanted to point out that when there is no allegation in the complaint that any of the unit owners, aside from the unit owners group, was involved in the decision of the board, the board represents the association, the board decided to sue the individual directors. The board didn't go to the unit owners for approval. Our clients or any other unit owner didn't say, I vote in favor of that. There's no allegation that says that. The board decided to sue themselves. Now, that might be for the possibility of benefit, but we had nothing to do with bringing the Krohn suit. We weren't involved in the Krohn suit. We weren't a member of the class. It's done. The only reason why we're talking about Krohn is so Truk can make the argument that the underlying complaint is the exact same as Krohn. Well, it's not the exact same as Krohn. It's been argued as nauseam in the underlying briefs that they're not the same suit. They're not against the same defendants. It's not the same plaintiff. It's not the same allegations. And they're just not the same. You can't squeeze the square peg in the round hole. And I just wanted to also say briefly that this, we're getting into dangerous precedent here by not finding the duty to defend, since the duty to defend is a very broad and its determination as to lack of duty to defend must be proven, proven without a doubt that there is no possibility of coverage. And I contend that finding in favor of Truk would be creating a very dangerous precedent for the duty to defend. And I urge the court not to do so. Thank you. Thank you very much. Attorney Garrison. Good afternoon again. I just want to very briefly address one big picture point, which is the suggestion by Truk's counsel that inferences or allegations and Truk's coverage complaint could somehow be used to determine the duty to defend. Again, it's, it's, you know, counsel for the individuals just mentioned the idea of getting into dangerous precedent. I don't think that is how the duty to defend works. If it did every insurer could plead that there's no coverage in their coverage complaint and use that to find there's no duty to defend. So we strongly disagree with that. We also disagree. And I'm sorry. We also agree with the individual unit owners council that reserves are not used to purchase insurance. That's not what is stated in the, in the declarations that not that's not how it works. There's also no allegation. There was a reference by Truk's counsel to paragraphs, 85 and 86 of the underlying complaint in those paragraphs, there's an allegation that certain individuals wanted to save money by reducing the insurance premium, saving money is very different than saying there was not enough money to pay for enough insurance. So again, as counsel mentioned, the duty to defend is broad. If a single allegation triggers or claim triggers coverage, there is a duty to defend exclusions are to be interpreted narrowly. And they must be free and clear of doubt here and exclusion for failure to maintain adequate reserves simply does not encompass an allegation of failure to purchase sufficient and service sufficient insurance. Thank you. Thank you very much. Are there any questions from my colleagues before we conclude? Okay. Thank you very much councils. You did an excellent job with your arguments and we will certainly take them into consideration. Thank you so much, everyone. Be well, this concludes our arguments. Thank you. Thank you.